UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

Carol A. Murphy,
    Plaintiff

    v.                                              Civil No. 09-cv-39-SJM

State of Maine; Christine Foster;
Kathryn L. Jones; John Baldacci;
G. Steven Rowe; Mark Randlett;
Seth Bradstreet, III; John Does
1-1000; and Jane Does 1-1000,
    Defendants


Carol A. Murphy,
    Plaintiff

    v.                                              Civil No. 09-cv-56-SJM

State of Maine; John Baldacci;
G. Steven Rowe; Christine Frasier;
Norma Worley; Melanie Nadeau;
Bentley Rathbun; Robert W. Spear;
John Does 1-1000; and
Jane Does 1-1000,
    Defendants


Carol A. Murphy,
    Plaintiff

    v.                                              Civil No. 09-cv-61-SJM

Town of Buxton, Maine; Daniel
Collomy; Linda W. Pulsoni;
Jean Harmon; Robert Libby;
Clifford Emery; Buxton Police
Department; Jody L. Thomas;
Michael Grovo; John Does
1-2000; and Jane Does 1-2000,
    Defendants

**O R D E R**

In these three civil suits Carol Murphy, acting pro se and in forma pauperis, continues what appears to be an ill-conceived quest to sue anyone and everyone whom she fancies to have been even remotely connected to either her past criminal conviction for animal cruelty or her ongoing claims to ownership or possession of various animals.  Including these cases, she has filed seven suits against numerous defendants including the Governor and Attorney General of Maine, state and federal judges, court clerks, town selectpersons, chiefs of police, state officials, and supposedly thousands of "John and Jane Does."

The United States District Court for the District of Maine entered an order on February 18 of this year prohibiting Murphy from filing any further lawsuits in this district involving "any dispute she may have with state or municipal officials within the State of Maine concerning animals," without first obtaining prior leave of court.  In Re Carol Murphy, Docket No. 1:09-MC-33, Order, dated February 18, 2009 (Woodcock, C.J.).  Based on that order, the Magistrate Judge has recommended that these three complaints be summarily dismissed, since each involves an alleged dispute between Murphy and Maine state and municipal officials concerning animals, yet she has not first obtained prior leave of

court to file them.  See Report and Recommendation dated February 26, 2009.

I cannot accept that recommendation on the grounds offered, because Murphy filed these complaints before Chief Judge Woodcock's order was entered.

On the other hand, each complaint bears all the hallmarks of frivolous litigation — the factual allegations are unspecific, amounting to little more than generalizations positing vast conspiracies (mostly of silence) among high government officials to deprive Murphy of due process, and broad claims that various state and town officials have engaged in unlawful searches or seizures of other people's property.

Because Murphy is proceeding pro se and in forma pauperis, her complaints are subject to preliminary review under the provisions of 28 U.S.C. § 1915(d)(2)(B).  Summary dismissal is appropriate in such cases if a complaint is found to be frivolous or malicious, or fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  Id.  The claims asserted in Murphy's three complaints do seem to be premised upon indisputably meritless legal theories and factual allegations that are clearly

baseless, fail to state claims upon which relief may be granted, seek to hold immune persons liable, and appear to be malicious and harassing.  See Neitzke v. Williams, 490 U.S. 319, 325 (1989).

**Background**

A thorough review of the relevant background can be found in Magistrate Judge John H. Rich's Report and Recommendation dated July 24, 2008, in Civil Case Nos. 08-80-B-H and 08-81-B-H, and in Chief Judge Woodcock's Order in Docket No. 1:09-MC-33.  Briefly, in 2005, Murphy was convicted in state court of the crime of animal cruelty, involving reprehensible abuse of many animals in her possession, including starvation, maintaining inhumane conditions, and failure to provide necessary medical attention.  On May 12, 2005, Murphy was sentenced (some might say leniently) in the Maine Superior Court to six months in prison, all but 24 hours suspended, followed by one year of probation and a fine of $1,000.  She was also ordered to pay restitution in the amount of $3,174.00, and, significantly, was permanently banned from possessing animals.  See State v. Murphy, Docket No. 04-cr-152 and 04-cr-153 (Me. Super. Ct.).  Her conviction was affirmed on appeal.  Since that conviction, she has embarked upon a course of action apparently aimed at harassing various state and municipal officials through civil litigation.

**The Complaints**

In Civil No. 09-cv-39, Murphy alleges that she purchased several dogs, that the dogs were boarded at the Fracas Kennel, and that various state and municipal actors unlawfully searched the Fracas Kennel and seized animals housed there, including her dogs, without warrant or probable cause.  Several fatal difficulties are apparent on the face of this complaint.  For example, Murphy does not have standing to assert the Fracas Kennel's (or its owners') civil rights.  And, her claimed property right to possess dogs would seem to be facially inconsistent with (and prohibited by) her earlier criminal sentence for cruelty to animals.  And, among the named defendants are a state judge and court clerk, both of whom are entitled to absolute judicial immunity.  See Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir. 1992).  Moreover, suggestions by Murphy that the state attorney general, governor, and agriculture commissioner are somehow subject to personal liability for conspiracy (by remaining silent, and failing to act on her various complaints) borders on the delusional.

In Civil No. 09-cv-56, Murphy's complaint seems to seek redress under a common law tort theory, or a statutory wrongful death theory, for the destruction in 2004 of a pet ("Thunder").  But, she neither claims ownership or custody of, or any property

right in Thunder at the time (she describes her relationship to Thunder as "caretaker" and "spokesperson").  Factual allegations in the complaint are few, and nothing suggests a legitimate basis for the exercise of either federal question or diversity jurisdiction.  And, again, the complaint is conclusory in its allegations of conspiracy by the named defendants, including the state's governor, attorney general, and various other state officials.  The complaint also fails to assert a valid claim of deprivation of property without due process, which seems to be the intended cause of action.  See Parratt-Hudson doctrine — a federal due process claim cannot be based on the alleged random and unauthorized conduct of governmental officials so long as the state has provided an adequate post deprivation remedy.  Parratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517 (1984); Hadfield v. McDonough, 407 F.3d 11, 19-20 (1st Cir. 2005).

In Civil No. 09-cv-61, Murphy complains that the named defendants, the Town of Buxton, five selectpersons, the Buxton Police Department, current and past Chiefs of Police, and thousands of John and Jane Does, all conspired to deprive another person — in this case the Jaime Kennel (and its owners) — of its due process rights, as a result of an apparent search and seizure (implicitly related to issues regarding animal care at the

6

facility).  Again, Murphy claims that she owned five dogs that were boarded at the Jaime Kennel, that those dogs were seized, and that town officials refuse to return them to her (which is probably understandable given her prior criminal conviction and sentence for animal cruelty).  Once again, the factual allegations are scant and wholly conclusory, bordering on delusional.  The legal theories are equally flawed (e.g., while claiming deprivation of property without due process, she again fails to plead the inadequacy of available pre- or post-deprivation procedures (see Parratt-Hudson doctrine), and, of course, she lacks standing to complain about any violation of Jaime Kennel's (or its owners') civil rights).

It is difficult to determine precisely what Murphy is complaining about in these cases because the factual allegations are too vague and conclusory.  So, it is difficult to list all of the legal deficiencies.  The basic problem with each complaint is what it does not contain — specific factual allegations tied to cognizable legal theories upon which relief is sought.

Suffice it to say at this point that each complaint seems dismissible under 28 U.S.C. § 1915(d)(2)(B) as frivolous, as malicious (i.e., brought merely to harass the named officials or some form of retribution for her animal cruelty conviction), for

failure to state a claim on which relief may be granted, as based upon indisputably meritless legal theories and factual allegations that are obviously baseless and delusional, and as seeking monetary relief from defendants who are immune from such relief.  In enacting Section 1915(d)(2)(b) Congress was rightfully concerned that civil litigation brought by pro se plaintiffs afforded in forma pauperis ("IFP") status poses a real risk of abuse, both of the legal system itself and the named defendants.  Such plaintiffs, like Murphy, are not dissuaded from initiating frivolous and abusive litigation by the normal array of disincentives — professional discipline and monetary sanctions — for they generally have nothing to lose and the litigation costs them nothing.  Accordingly, courts review suits filed by pro se litigants afforded IFP status for legitimacy under the Section 1915 standard before requiring named defendants to expend time, money, and effort in responding.

   Having performed that review, after rejecting the Magistrate Judge's recommendation, I am of the view that these complaints ought to be summarily dismissed, sua sponte, as discussed above. "But, haste makes waste, and it will be the rare case in which sua sponte dismissal — at least, a sua sponte dismissal without leave to amend — will be upheld [on appeal]."  Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001).  While it

seems highly unlikely that Murphy can cure the flaws in her complaints, and that amendments will prove futile, still, she may, if she chooses, file an amended complaint in each case on or before August 14, 2009, in an effort to cure the many deficiencies and avoid summary dismissal.  If she files amended complaints in a timely fashion, those complaints will be reviewed under the Section 1915 standard.  Failure to file amended complaints by the deadline will result in dismissal of the case(s).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 10, 2009

cc:  Carol A. Murphy, pro se